# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4052 | **DATE** | 10/16/2001 |
| **CASE TITLE** | IN RE: BETTYE J. HOLLOWAY vs. USA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The decision of the bankruptcy court is reversed and remanded to the bankruptcy court for further proceedings consistent with this memorandum opinion.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 17 2001 date docketed | 9 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | 01 OCT 16 PM 5:57 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

IN RE:

BETTYE JEAN HOLLOWAY,

    Appellant and Plaintiff,

v.

UNITED STATES OF AMERICA,

    Appellee and Defendant.

Case No. 01 C 4052

The Honorable John W. Darrah

DOCKETED
OCT 17 2001

## MEMORANDUM OPINION AND ORDER

Appellant Bettye Jean Holloway ("Holloway") has appealed the bankruptcy court's grant of the Department of Housing and Urban Development's ("HUD") motion to dismiss the adversary complaint [1-1]. For the reasons that follow, the decision of the bankruptcy court is reversed.

## BACKGROUND

Appellant Bettye Jean Holloway owns a home at 315 South Francisco in Chicago, Illinois. This home is Holloway's principal residence. As of June 1, 2000, this home was worth $55,000. The home is subject to a first mortgage lien dating back to 1995. The balance owed on the first mortgage as of March 20, 2000, was $69,921.65.

On May 2, 1996, Holloway and her late husband granted Pioneer Bank and Trust Company a mortgage in the home. On January 6, 1999, HUD became the holder of the junior mortgage the Holloways had granted on the home.

Holloway filed a Chapter 13 bankruptcy on June 14, 2000. Her Chapter 13 Plan was

confirmed on August 28, 2000. Holloway filed a separate adversary proceeding on August 29, 2000, naming the United States of America as defendant.

The adversary complaint alleged that because Holloway's home was worth less than the amount owed on the first mortgage, HUD's junior mortgage ceased to be secured. Holloway sought the determination that HUD was a wholly unsecured claimant under 11 U.S.C. § 506(a) (2001). If HUD's claim was found to be wholly unsecured, then HUD's mortgage should be avoided under § 506(d). 11 U.S.C. § 506(d) (2001). HUD alleged in a proof of claim that it is owed $12,953.28 as of the date of filing of bankruptcy. HUD alleged that its debt is fully secured.

HUD moved to dismiss Holloway's complaint for failure to state a claim. HUD argued that Holloway's complaint was barred by 11 U.S.C. § 1322(b)(2) (2001). The bankruptcy court granted HUD's motion to dismiss. In reliance upon *Barnes v. American General Finance (In re Barnes)*, 207 B.R. 588 (Bankr. N.D. Ill. 1997), the bankruptcy court held that § 1322(b)(2)'s anti-modification clause barred any modification of HUD's rights, regardless of a valuation of HUD's collateral.

Holloway appealed the bankruptcy court's grant of dismissal to this Court.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail

the facts upon which he bases his claim'" [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The bankruptcy court's findings of fact are accepted unless clearly erroneous and its conclusions of law are reviewed *de novo*. *Boberschmidt v. Society Nat'l Bank (In re Jones)*, 226 F.3d 917, 920 (7th Cir. 2000).

## DISCUSSION

HUD moved to dismiss, arguing that the plain meaning of § 1322(b)(2) bars the modification of the rights of the holder of a claim whose sole security is a mortgage in the debtor's principal residence whether or not its mortgage is wholly unsecured. Therefore, because HUD is the holder of a claim whose sole security is a mortgage in Holloway's principal residence, its claim cannot be modified.

Holloway argues that § 1322(b)(2)'s anti-modification clause does not apply to HUD's junior mortgage because the junior mortgage is not a secured claim. Holloway argues that since the unpaid balance of the senior mortgage is greater than the value of the residence, HUD's junior mortgage is not secured by any equity in the residence. Thus, HUD cannot qualify as a holder of a secured claim under § 506(a). Therefore, HUD's junior mortgage is wholly unsecured and should be voided pursuant to § 506(d).

-3-

The issue before this Court is whether § 1322(b)(2)'s anti-modification clause bars Holloway's Complaint for the modification of HUD's rights in her residence. Section 1322(b)(2) provides that a Chapter 13 bankruptcy plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). Section 506(a) provides "that [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a) (2001). Section 506(d) provides that "a lien [that] secures a claim against the debtor that is not an allowed secured claim" is void. 11 U.S.C. § 506(d).

Section 1322(b)(2)'s anti-modification clause does not bar Holloway's Complaint for the modification of HUD's rights in her residence. HUD argues that the court need not look beyond the plain language of the statute because the statutory scheme is coherent and consistent. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989). Furthermore, in interpreting the plain meaning of a statute, the statutory definitions of words used in the same statute should be given controlling effect. *See Sierra Club v. Clark*, 755 F.2d 608, 613 (8th Cir. 1985).

"Claim" is defined in the bankruptcy code as "right to payment . . . secured or unsecured." 11 U.S.C. § 101(5) (2001). A "security interest" is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). Thus, HUD argues that § 1322(b)(2) should be read as providing that a Chapter 13 plan may "modify the rights of holders of secured [rights to payment . . . secured or unsecured], other than a [right to payment . . . secured or unsecured] secured only by a [lien created by an

agreement] in real property that is the debtor's principal residence." Based on this construction, HUD argues that § 1322(b)(2) bars the modification of even wholly unsecured claims that are secured only by a mortgage in the debtor's principal residence. Furthermore, HUD argues that this construction is supported by *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993).

In *Nobelman*, the debtors executed a mortgage with the bank for the purchase of their principal residence. 508 U.S. at 326. The debtors filed for bankruptcy and the bank filed a proof of claim with the bankruptcy court for $71,335. *Nobelman*, 508 U.S. at 326. The debtors' chapter 13 plan valued the residence at $23,500 "and proposed to make payments pursuant to the mortgage contract only up to that amount (plus prepetition arrearages)." *Nobelman*, 508 U.S. at 326. The debtors sought "to treat the remainder of the bank's claim as unsecured" in reliance on § 506(a). *Nobelman*, 508 U.S. at 326. The Court held that the proposed bifurcation of the bank's claim into secured and unsecured claims modified the bank's rights as a homestead mortgagee in violation of § 1322(b)(2). *Nobelman*, 508 U.S. at 332.

HUD argues that this language in *Nobelman* supports its argument that its junior mortgage cannot be avoided even though it is wholly unsecured because that would be a modification of HUD's rights as a homestead mortgagee in violation of § 1322(b)(2).

However, *Nobelman* is distinguishable from the instant case. In *Nobelman*, the Supreme Court held that § 1322(b)(2) prohibited modification of the bank's rights because the bank was "still a 'holder' of a 'secured claim[]'because [the debtors'] home retain[ed] $23,500 of value as collateral." 508 U.S. at 329. This language in *Nobelman* has been interpreted to mean that claims are deemed unsecured if they are secured solely by inadequate equity in the debtor's residence. *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 291-93 (5th Cir. 2000)

-5-

(holding a claim to be unsecured if secured by inadequate equity in the debtor's principal residence); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d Cir. 2000) (same); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1360 (11th Cir. 2000) (same); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 833 (B.A.P. 1st Cir. 2000) ("[A]n allowed secured claim cannot exceed the value of the collateral."); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 38 (B.A.P. 9th Cir.1997) (same). Here, the senior mortgage fully encumbers Holloway's home, leaving no equity to secure its mortgage. Therefore, HUD does not have a secured claim.

HUD further argues that under *Nobelman*, § 1322(b)(2) prohibits the modifications of the rights of any component of a homestead mortgagee's claim even if the claim is wholly unsecured because the Supreme Court reasoned that the Nobelmans could not reduce the mortgage principal to the fair market value of the house without modifying the rights of the bank as to interest rates, payment amounts, etc. 508 U.S. at 331. However, this argument misses the mark.

In *Nobelman*, the bank's claim was merely undersecured, that is, secured in part and unsecured in part, not wholly unsecured like HUD's. "The bank's contractual rights [were] contained in a unitary note that applie[d] at once to the bank's overall claim, including both the secured and unsecured components." *Nobelman*, 508 U.S. at 331.

Here, HUD's claim has no secured component. "Any claim that is wholly unsecured . . . would not be protected from modification under section 1322(b)(2)." *In re Tanner*, 217 F.3d at 1360; *see also In re Bartee*, 212 F.3d at 280 ("[T]he Bankruptcy Code's antimodification provisions do not protect secondary lienholders whose interest is not supported by at least some value in the debtor's principal residence."); *In re McDonald*, 205 F.3d at 612; *In re Mann*, 249 B.R. at 837 (holding that a claim must be at least partially secured as determined by § 506(a) to be protected

from modification under § 1322(b)(2)); *In re Lam*, 211 B.R. at 41 (holding § 1322(b)(2) bar does not apply to holders of totally unsecured claims).

> Nothing secures the "right" of the lienholder to continue to receive monthly installment payments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract payment obligations.

*In re Lam*, 211 B.R. at 40.

Moreover, "the legislative history [of § 1322(b)(2)] indicat[es] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at 331 (Stevens, J., concurring). Courts have reasoned that "because second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under § 1322(b)(2) do not exist for second mortgagees." *In re Lam*, 211 B.R. at 41; *see also In re Bartee*, 212 F.3d at 293 (reasoning that extending § 1322(b)(2) protection to wholly unsecured second mortgagees "would be unlikely to positively impact home building and buying"); *In re McDonald*, 205 F.3d at 613 (reasoning that because a second mortgagee is more like a general creditor than a first mortgagee, claims that are not secured by any value in the collateral will be deemed unsecured)

HUD also argues that the general provisions of § 506(a) should not be "interpreted to authorize what is disallowed by the specific language of § 1322(b)(2)," modification of a homestead mortgagee's rights. (Appellee's Br. at 12.) However, the *Nobelman* Court's statement that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," 508 U.S. at 328, undermines HUD's contention that valuation under § 506(a) is not "a starting point . . . as to a claim described by its antimodification clause."

(Appellee's Br. at 10.) Furthermore, the Courts of Appeals that have dealt with the issue all agree that "the only reading of both §§ 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim and then to protect from modification any claim that is secured by any amount of collateral in the residence." *In re Tanner*, 217 F.3d at 1360 (citing *In re Bartee*, 212 F.3d at 290; *In re McDonald*, 205 F.3d at 611). "If a mortgage holder's claim is wholly unsecured, then after the valuation that Justice Thomas said that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence." *In re McDonald*, 205 F.3d at 612.

Finally, HUD argues that the construction that § 1322(b)(2)'s anti-modification clause does not apply to wholly unsecured mortgages will afford § 1322(b)(2)'s protection to a mortgagee with a single penny of equity in collateral in the debtor's principal residence but not to a mortgagee who cannot demonstrate any equity. HUD's argument is unpersuasive as a matter of law. "[L]ine drawing is often required in the law and, at the boundary, the appearance of unfairness is unavoidable." *In re McDonald*, 205 F.3d at 613. However, any unfairness that results from this interpretation falls squarely on the debtor and not the mortgagee who is no worse off "than other secured creditors who operate outside of mortgage lending." *In re McDonald*, 205 F.3d at 614.

Therefore, § 1322(b)(2) does not prohibit the modification of any claim secured only by a mortgage in the debtor's principal residence that is not secured by some amount of collateral in the residence. Thus, HUD has not demonstrated that Holloway can prove no set of facts to support the allegations in her claim.

## CONCLUSION

For the reasons stated herein, the decision of the bankruptcy court is reversed and remanded to the bankruptcy court for further proceedings consistent with this memorandum opinion.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: October 16, 2001